Council for the Appellants can come on up. Good morning, Your Honors. I'm Aaron Levin, Director of the Christensen's Rights Clinic at UCLA Law, and I'm here with my student, Jack Stephens, and I'll leave us to Mr. Stephens will be presenting arguments. Excellent, Mr. Stephens. Your Honors, may it please the Court, I'm certified law student Jack Stephens on behalf of Appellant Sean Sheltra. I'd like to reserve two minutes for a vote. Over a month and a half period beginning in February 2020, Appellant Sean Sheltra was subjected to continuous threats of extortion and grave physical injury. On April 17th, just as he predicted in his formal appeal, he was attacked in his cell by a prisoner, paid by those he had named in his grievance materials. Mr. Sheltra's grievance, which properly adhered to IDOC procedure, notified defendants of a substantial risk of serious harm, and gave them ample opportunity to take protective action, was plainly sufficient to satisfy the PLRA exhaustion requirement. Defendant's position, on the other hand, is illogical and unsupported by case law. Counsel, hadn't the prison actually taken some steps to address their earlier concerns? Wasn't he moved out of his pod for some period of time and then returned sometime later? Your Honor, Mr. Sheltra was moved for about a week period after he had exhausted his formal appeal, but that was to investigate Mr. Sheltra for his involvement in an extortion scheme, and he was subsequently moved back to the cell where he had actually been. So not in response to any of the – is it your position that the prison never responded to any of these kinds? Yes, Your Honor, the prison never took any protective action that was responsive to the particular risks that Mr. Sheltra identified. I thought there was some communication about, you know, we don't have any demonstrated evidence of, you know, prior altercations or actual incidents involving threats. Wasn't that their response, that if you have concerns, go to security investigations and lay out names? Yes, Your Honor. The prison administrators did respond at several junctures throughout the informal process to say, you have no documented safety concerns or you should process these complaints to investigations. But he didn't want to give up names initially, is that right? He gave up names in his second concern form, which suggests that – That wasn't my question. The first time they asked him, he was reluctant to name names. Isn't that what the record shows? The record suggests that at the beginning of the informal process, the fifth concern form, Mr. Sheltra was relatively hesitant to name names. But by the end of the process, by the time that he had appealed the formal grievances – So maybe this goes to the merits, but wouldn't that all be evidence that would be relevant to whether or not the conduct of the officials amounted to deliberate indifference? Yes, Your Honor. I do think that's the merits question. So pursuant to Farmer, if the prison reasonably responds to the risks identified – So it wouldn't be accurate to say that they did absolutely nothing. It wasn't like they just blew it off and ignored his written concerns. Our precise position is that they didn't take protective action in response to the risks that they identified. They did respond to his concern forms, grievances, and appeal, but none of those actions were responsive or took seriously to the situation. Was there also in the record some concern about whether or not he was trying to use this process to manipulate cell block assignment so that he could maneuver back into a pod where he had an inmate that he had some romantic interest in? Your Honor, that was included in a response to one of the concern forms. And he was also investigated at that same time, was he not, for being perhaps part of some kind of an organized extortion ring operating inside the institution? Yes, Your Honor. So that's precisely why he was placed in protective custody for about a week, but he was subsequently returned to the place where he was being interrogated. In the end, I realize it's a merits question, but all that would be relevant to whether or not the officials were deliberately indifferent. Yes, Your Honor. That would go to the reasonableness of their response. Do we consider any of those questions when we're deciding whether exhaustion was satisfied in this case or not? No, Your Honor. The core question here is whether Mr. Schultz's grievance materials from concern form through formal appeal gave defendants adequate notice of and an opportunity to resolve the risks of danger that he identified in his grievance materials. He has done so plainly. So it's clear that in his grievance efforts, he doesn't reference the attack that ultimately happened because his grievance has occurred before the attack. And then the complaint talks a lot about the attack. So why didn't he need to grieve specifically that incident? Your Honor, this goes to the precise contours of an infamous violation. So per farmer, one must show that there was a substantial risk of serious harm and that defendants consciously disregarded that risk. Mr. Schultz has done so here. And at least by the end of the appeal, defendants had consciously disregarded that risk. And so in his materials, he was very clear that if there was no protective action taken, he would be attacked. Defendants consciously disregarded that risk, and he was attacked. So the attack is part and parcel with the threats that he received and documented to the defendants. So it does seem, though, they did investigate his grievance, though, and they concluded that there was no basis for that safety concern, that that was more of an attempt to manipulate the housing. So why doesn't that cut off the chain of this continuing violation that you're trying to assert? Your Honor, the only evidence in the record to suggest that Mr. Schultz was somehow at fault is in the response to the grievance process. And I think the focus here should be on Mr. Schultz's submissions. And so those were clear that he was subjected to a risk from known and unknown prisoners, and that risk did materialize. But if the purpose of grievance is to provide notice to the prison officials, he provided a grievance. They investigated, concluded there was no basis for the concern, and then down the line they might have been wrong with that, but that's not what the purpose of grievance is, and whether or not they're right or wrong in determining and investigating these concerns. But the fact that he grieved, they investigated, concluded no concern, and then he gets attacked later, why doesn't that constitute something different that requires a different notice? Your Honor, Mr. Schultz identified these risks, and there's a clear link between those risks and the subsequent attack. I agree. The problem is the prison officials investigated it and concluded there was no risk, and they were clearly wrong according to the allegations. But the no-risk requirement is not about determining whether or not they're good at investigating their grievances, but the fact that they got the grievance investigated, were clearly wrong in their determination, to me that just seems like it would cut off the continuous chain or continuous violation that you're alleging. Two responses, Your Honor. First, I think that to echo my conversation with Judge Talman, I think that the reasonableness or the efficacy or the accuracy of the defendant's response is a matter of question, and so that will go to the reasonableness of the response. I don't think it cuts off the continuation. Well, I thought you were arguing for a continuous violation here, right? Yes, Your Honor. So if you allege a violation, that's continuous, but there's a chain that cuts it when the prison officials investigated the issue and concluded there's no reason to continue. So that seems to cut off the continuous violation, right? Your Honor, I disagree because Mr. Seltzer identified that there was a risk, and defendants consciously disregard that risk and continue doing so until he was attacked. No, but I guess, I mean, that goes to the merits question, not the question of whether or not there's a continuous violation. I see there's two different questions, whether or not there's a continuous violation and whether or not they were deliberate and different. And as far as a continuous violation, they investigated it and concluded there's no basis, and so why doesn't that require your client to provide another notice? Your Honor, Mr. Seltzer provided all the notice that he could in his initial grievance response. So he identified the risk of known and unknown prisoners. He suggested why not provide notice after the attack. Because the attack didn't change the nature of the circumstances in which Mr. Seltzer found himself. He was subjected to risk from known and unknown prisoners, and then those risks materialized. He had suggested a response, and he had told defendants that he would sue if they did not respond. It actually, to the respect that it proved that the prison's investigation was inadequate, right? So he grieved, they investigated, they made a wrong determination, you know, his attack. So giving notice would then say you were wrong in your investigation. You need to reopen your investigation, and therefore it's not a continuous violation. Your Honor, just one response, because I see my time is up. Yeah. I think that the fact that defendants didn't investigate the claim, I think there's evidence in the record to suggest that those investigations were quite insignificant. I understand that would be more of a merits issue. I think the point here is that nothing changed between the time that Mr. Seltzer initially grieved and the attack, and there was nothing he could do to give the defendants more notice of the risks to which he was subjected. But the attack came from an inmate that he hadn't had any contact with before, is that correct? That's correct, Your Honor. And his theory was that the people that he did have contact with before had hired the other inmate to assault him? Yes, Your Honor. Okay. All right, our questions took you over, so we'll give you your two minutes or so. Thank you, Your Honor. Is your questions in? Yes, sir. Oh, sorry. I'm looking at the party's name and not this one. Thank you. Can you adjust this slightly? Sure. Good morning, Your Honors, and may it please the Court, Aaron Green for the Idaho Attorney General's Office, on behalf of Warren Christensen and the Department of Corrections appellees. Appellant had repeatedly used this prison grievance procedure and knew that he had to present a specific grievance before filing a complaint in federal court, and he did so here two months too late. Despite his failure to timely exhaust his administrative remedies, he asked his court to revive his fatal claim. But even if this court were to adopt his theory of a continuing violation exception, which has been rejected by this court and foreclosed by the Supreme Court, his claims are still barred. Not only are they untimely, they are unspecific. Let me ask you, if he had filed a grievance after the assault within the 30-day time period provided in the administrative regulations, would you concede that if that were the case, then his claim was exhausted and he could proceed with his lawsuit? Your Honor, if he filed the concern form grievance and appeal as specified in the standard operating procedure, yes, Your Honor, then he would have gone through the entire process. And as a practical matter, what could the prison do after the assault to address the assault? Well, there's a couple of policy concerns that the Supreme Court has elucidated in Woodford and in Ross. First, the nature of the prison is such that requiring Mr. Shelter to go through the administrative process instills respect for the pedagogical procedures. As Judge Kennedy said when he was sitting on this court, keeping dangerous men in unsafe condition or keeping dangerous men in safe conditions in a humane way is a very strong state interest. Additionally, he would have the opportunity to provide immediate relief rather than relief that requires court time and processes. You have the opportunity to allow Mr. Shelter to receive some relief, even if he ultimately finds anything less than a million dollars insufficient. There might be something else that the prison could have offered him, or he would have gone through the process and realized he in fact had no claim. Was he moved after the assault to some other location in the prison or even to a different institution? That information is not on the record, Your Honor. Ultimately, as your questions pointed out, Your Honor, at SCR 38 you do see that the prison did in fact, if this court is concerned about the merits, did take some action after his initial grievances and prior to the assault by giving him what is called a modified form of relief. It is in part, I mean, the warden does comment that part of that is the result of the investigation into Mr. Shelter, but he does in fact receive relief. He is isolated. What was he isolated because he was subject to a criminal investigation for being involved in an internal extortion, right? Wasn't that why he was isolated, so he couldn't interfere with the interviews of the other suspects? Your Honor, yes, the warden's comments reflect that, but ultimately that's not relevant here. The question is whether or not Mr. Shelter could have grieved the assault after circumstances changed. I'm just trying to test the efficacy. I understand the reason behind the regulations, but clearly based on his prior grievances, the prison officials understood that he had safety concerns. Maybe that could be said of every inmate in prison, and I know our prison officials try to protect the inmates from other inmates harming them, but I don't think it's a strict liability statute as I understand deliberate indifference. No, Your Honor, and that gets to the specificity element here. As your question seemed to reflect, there's a concern that theoretically you could permanently exhaust administrative remedies by walking into a prison and perhaps understandably having some sort of apprehension about the prison environment. Thankfully, the Supreme Court has elucidated in Jones v. Bach, and as this Court noted in Griffin v. Arpaio, that the specificity and when a claim is actually presented under the PLRA is dependent on the prison regulations at issue. In this case, as this Court can note, at ER 9495, that requires dates, places, and names specifically. I guess I'm struggling with that a little bit because in his appeal, so he grieved, he was denied, he appealed the grievance, and in his appeal he states, I give you notice of the situation I'm in, and you're purposely failing to act to protect me. I'm going to refuse to pay their extortion, and the attack and or sexual assault will be because of ISCC officials facilitating the assault. That's pretty specific. And as part of that, he also says, I've given you the names of people who are threatening me. So in terms of specificity, I'm like, what more did he need to say to put the prison on notice of the situation he thought he was facing? It turns out he was right, he was facing. I would quibble with the idea that he was right, that he was facing this specific threat. He ultimately... Well, I guess we have to at this point sort of accept his allegations, and his allegations are that one of the three people that he specifically named paid someone to attack him. Well, I do want to clarify just a little bit. We are on a motion for summary judgment, so it's not accepting the truth of a low-blood allegation. No, I understand that, but we view the evidence in his favor, and he has evidence of that. And you haven't contested it, either. I haven't seen anything contesting that. That the assault actually happened? No, Your Honor. No, that the assault was perpetrated by someone paid by the three named defendants. I mean, detainees. No, Your Honor. And although we're reserving that issue, I mean, theoretically, if this goes back on the merits, we would want to be able to contest those sorts of evidentiary issues. Currently, the only facts in the record are Mr. Shelter's self-serving... We would view it as a self-serving and conclusory affidavit, not sufficient to withstand summary judgment. But even if you take it as true, that Decker, in this case, the fourth inmate, who was never named in any previous grievance, was paid by the others, there's no evidence that anyone other than these three inmates is thought by Shelter to be a safety assault. He said, I've given the names Walton, Young, and now Willard. Decker is nowhere to be found anywhere in this record except when Mr. Shelter pleads his initial verified complaint. That's the only place he shows up. He shows up in no prior grievance. I'm aware other cases have indicated that a prisoner does not, to exhaust a prisoner, does not have to specifically name the person as long as they describe the situation or the threat. I disagree with that, Your Honor. Farmer is not an exhaustion case, and the only commentary that Farmer says comes at the end where it specifically states that exhaustion of remedies is still required. Farmer is an elements case for the test for deliberate indifference, and specifically in that case regarding the mens rea required. But... Do you have a case that specifically tells us that we have to have a named person before we can establish exhaustion for a failure to protect case? Jones and Griffin v. Arpaio for the principle that prison grievance procedures give you the contours for what specifically needs to be grieved. Look to those two cases and then look to the specific... So can you cite me to something in the Idaho procedures that says that in a failure to protect situation you have to specifically name the person? Your Honor, not specifically in a failure to protect situation. However, in general... I apologize, that's ER 97. Grievance and Arpaio forms must be handwritten and legible, must contain a reasonable and clear description of the problem, and contain specific information such as dates, places, and names. That is in the standard operating procedure Mr. Sheltrow was given. Obviously, I don't think your argument would be, and correct me if I'm wrong, that he would have to say, on August 15th I'm going to be attacked by young. You're not going to request, how would he ever do that? We're not requesting that he pre-grieve something, and that's sort of the issue here, is that, and I do want to talk about availability just for a moment, but he was ultimately able to grieve after the assault happened. There's no necessity and no prejudice by requiring him to grieve after the fact before coming into federal court, so that prison officials can address the claim at issue. But his grievance was dismissed because it was untimely, right? Yes, your Honor. So nothing happened as a result of that untimely grievance? In July, no, your Honor. The July grievance, which does come afterwards, one is also unspecific. He says, I'd like to file a late grievance because of an unspecified safety concern. We'll take it as true that it was related, as he says in his amended complaint and in his affidavit on summary judgment, that it's related to this assault. But ultimately, he doesn't give prison officials any indication as to why he wants to file a late grievance. And I apologize, your Honor, for the question again. Why have you answered it? Okay. So assuming that we disagree with you and say that it is a continuing violation exception to or, you know, which is included in the exhaustion, why shouldn't that apply here? Your Honor, because the grievance, even if you believe that the Walton, Young, and Willard claim is somehow extended, which, again, this court has already said that exception doesn't apply, there's only one exception in the PLRA, and that's availability, it would draw forward theoretically the Walton, Young, and Willard claim. There is no claim presented here for Decker, and ultimately the grievance is not specific enough to give prison officials notice. That's true, whether or not you buy that exception. So you're saying, no, but assuming, number one, that we believe there's a continuing violation exception, and two, that Decker is related to the three initial inmates, because that seems what's being pled before us, why is that not a continuing violation? It all seems, if he's arguing, I'm threatened and I'm being extorted by these three guys, and on April 10th I'm going to be attacked if I don't pay, gets attacked on April 17th, I believe, and it seems like precisely for the same reasons that he said he was going to be attacked, why isn't this a continuing violation? Because, Your Honor, I would look at SCR 38 and see what exactly it is that he, and I see I'm out of time, may I briefly conclude? Yeah, I have a couple, if you don't mind. Okay. And so what he actually says is, Walton, Young, and Willard, they're going to attack me. There is no indication whatsoever that there's any other broader conspiracy. It is those three. That's all the prison is on notice. But is it that thinly that, you know, he says these three inmates are going to attack me, and so therefore the fact that the three inmates hired someone else to attack them then cuts off the change. But isn't that not plausible? I mean, if we're talking about policy, ultimately it's the prison's obligation to investigate and ameliorate a claim, and that is where I was thinking you would be going, is that you got the initial grievance, and it seems like it was investigated and just deemed not credible. Is that right? I'm looking at ER 117 where it says, you know, your housing is appropriate based off your behavioral issues, and we believe that this grievance is an attempt to manipulate housing. Right. Does that represent that the prison officials investigated the initial concern? Yes, Your Honor. That's correct. And then, so why wouldn't the argument be that because the prison officials investigated the concern, that cuts off any continuing violation, even though, you know, clearly the prison official is inadequate in investigating it? I mean, again, presuming a continuing violation exception exists, I would say that, well, I would be tempted to agree with Your Honor that the fact that prison officials investigated is, in fact, one of the breaks in the chain, and in addition to the fact that circumstances changed, and, you know, you have their own case, Johnson v. Johnson from the Fifth Circuit, which says on footnote 13 that even under one of their cases on a continuing violation, if you have a circumstance, and circumstances that were truly brutal, you have a circumstance of prison rape, and then 15 days later another one happens, even if you grieve the first one, you would still be obligated to grieve the second one. And so not only is the investigation a break in the chain, I would agree with you, Judge Bumate, but the time difference as well is also a break in the chain. If the Court is up for further questions, we'd ask you to affirm. Thank you, counsel. Mr. Stephenson, you have two minutes for your rebuttal. Your Honor, so I'd like to start by returning to the record to address the concern that Mr. Shelter did not name the assailant in his grievance materials. The prison counsel says that Mr. Shelter said that Young and others would attack him. That is not what was included in the grievance materials. Shelter was clear that Young and others threatened him, and he was clear in his concern forms that he did not know who others were. So the threats were coming from known and unknown prisoners? Well, his theory was that they ordered the assault, correct? Yeah, exactly. And we don't know what his proof is of that. That's what he alleges. Correct, Your Honor. But another one of my points is that that is included in the Verified Inmate Complaint, which can be treated as an affidavit for purposes of challenging summary judgment. Another point in rebuttal, you have the concern that the investigation cuts off the continuation of the violations after there's a break in the chain of the continuous violation. And it is sort of a fact of these types of cases that most, if not a grand majority, of grievances filed by prisoners are rejected as lacking merit. And so if that were to break the chain, then no continuing violation would ever make it to court. That would be the response. The only way that would work is if the prison officials, and they do that sometimes, just completely ignore agreements or a case that is filed and presented properly. Yes, Your Honor. Well, I guess because my concern is some of the other cases that have continuous violations are usually like prison policies like, you know, Hell-Hell Foods, I think, is one of the cases cited. And so this one seems a little different because it's like, you know, the specific incidences that you're saying there's a chain. I think there's one case maybe where there is sexual assaults that happen repeatedly, and that was considered a continuing violation. But normally you would think of a continuing violation as a prison policy that's unbroken, and so therefore it would be futile or useless to file a new grievance. But here, you know, grievance investigated, deeming it's not credible, and then something else happens that showed that that investigation was inadequate. It seems like that's two different things, and there could be a break. Yeah. Your Honor, it is true that most, or not most, but many of the cases that we cite of the docking circuits deal with acts of co-omission. So there are policies and there were, you know, orthopedic consultations, things like that. Whereas here we have an act of co-omission, and so it is a little bit trickier. But as Johnson and Howard make clear, I think it is clearly workable to apply the continuing violation doctrine in a fair context. Are there no further questions? Thank you, Your Honor. Thank you very much, counsel, for your helpful arguments. And I would just also specifically say thank you to the UCLA Law School and your clinic for assisting the court in our pro bono program. We really appreciate your willingness to take on a case and present it. Thank you.
judges: TALLMAN, FORREST, BUMATAY